Case number 23-7142 Junius J. Joyner, III, Avalanche v. Morrison and Foerster LLP, et al. Mr. Joyner for the Avalanche, Mr. Schoenberg for the Avalanche. Roderick, can you hear me? I can hear you, although there's quite a lot of feedback. Apologize, Your Honor. Okay, can you hear me again? I can hear you, but there is an enormous amount of echo and feedback. Apologies again, Your Honor. It's something I can't control. Is that any better? That's perfect now. We can't see you, but we can hear you. All right, thank you. I went on a little bit, but I'll start just where I began. And just to say that this, the case before the court, and first I'd like to reserve two minutes of time for rebuttal. The issue before the court today deals with, the issue before the court today, is the three causes of accident that was before the district court was dismissed. And the real issue is the pleading standard under 8A that requires only a short claim statement. And the guidance to be given, or for the court to consider, is what's under Swykervich v. Seroma. And in that opinion, the court says that there's an incongruence if you're going to look at the pleading standard under, or the promulgation standard under McDonnell-Douglas versus the pleading standard under 8A, which just requires a short claim statement. Under McDonnell-Douglas, the plaintiff is given the benefit of summary judgment as evidentiary standard. Pleading standard, the purpose is just to show the court that the plaintiff is entitled to prevail, or at least do not prevail, but to offer evidence to support the claim. That's the, and in short what the court says is that, Mr. Kleiner? Yes. With regard to the pleading standard and what you are required to plausibly allege under Iqbal and Twombly, do you agree that you must plausibly allege that you were treated differently than someone similarly situated? I completely agree with that, Your Honor. And that seems to be the respondent's main contention is that that's something that I didn't do. And on Friday, with very short notice, the respondent gave additional supporting case law. And all those cases, they fall into three different categories. They fall into the first category being that basically the plaintiff pledged himself out of the comparatory analysis of the similarly situated. He or she also either just made conclusionary statements that did not provide the factual detail, or lastly, that they didn't provide any detail at all. And the first two are easily dismissed because I did not, when I named the comparators, I did not plead them out. I did not name, say like in Redmond, YMCA, that, you know, one person was a supervisor, one person was not. It was consistent across the board. And I did not make just only conclusionary statements. I concluded factual detail. So what's relevant to the court is under Ashcroft v. Ichabal at 129 Supreme Court, 137 pinpoint site, 664, is that the determination is whether a complaint states a plausible claim based on the specific context. And the court's supposed to, you know, use its judicial experience and common sense. And if you use that standard to what I actually pled, in the case of, I'll just run through real quickly. In the case of, and I don't have the benefit of seeing the clock, so I'll try to run this pretty quickly. Mr. Joyner, you're at 3 minutes and 30 seconds, and you reserved 2 minutes for your time. I'll give you a few extra minutes because of the technical difficulties at the beginning. Great. Thank you. Thank you, sir. So with most of our- Mr. Joyner, can I just ask you to focus on this case? So if you're accepting that you have to plead something to show that others were treated differently from you and that they were similarly situated, what's the precise language in the complaint you would have us look to? So the precise language is that I cited Harrison and Nolan assigned to Rome, and it was customary for team integration team members, that being a specific word used to be assigned to a specific team. I cited three specific co-workers, white co-workers, and I cited specifically that the hired counsel had hired, and it's my information belief, again, without discovery, had hired every single attorney had gone strictly to a team. And so the analogy would be, you know, what the sponsor is asking for is something that's just unusual. To know, like, the background of an attorney, I would not know that. To know their title, and it's not relevant. What's relevant is that all team members were assigned to a team, and yet an African-American team member was not. That would be the first issue. It's also the issue of being restricted to not go to certain areas and not be present based on a complaint of a co-worker. While I also cited footnote number seven, that a similar co-worker would do the same thing, a non-protective white attorney, and they did not have that same restriction. The similar situation is exactly the complainant, the complaint that she raised against him versus the complaint that she raised against me. I'm not going to – that information is confidential. There's no way that I could potentially have that information at the pleading stage. Where do you get – Mr. Joyner, where do you get the idea that there's a dichotomy between a protected worker and a non-protected worker? Where does that come from? Well, that's the whole basis of being similarly situated. That's how you show the difference of discrimination by that. McDonnell Douglas said nothing of the sort, didn't use the word protected, non-protected. It depends on what the invidious discrimination is. A white worker has protected, is protected from discrimination just like a black worker is. So I don't see where you get the idea that there's a difference between the two. Well, all the cases – well, okay, so to begin with, to start with, similarly situated specifically in the racial discrimination context, you can look to Mulgrew versus the city of St. Louis, the recent Supreme Court decision. That was an African-American female who brought charges that she was discriminated fairly against based on non-protected white workers. Before you get into other cases, let me ask you. Your claim as far as the workflow or whatever it's called is based on Section 1981? Correct. Right. What are the terms of the contract that you're claiming was enforced illegally? What are the terms? Well, actually – Let me put it differently. Let me put it differently. Is there – number one, do you have a written contract? Did you have a written contract? Okay, well, Your Honor, actually, I misstated. The original story comes from 1981 for district treatment, but the story comes from 42 U.S.C. 2000, A2, A1, and that's the death for treatment. First – excuse me. That's partly where the death for treatment comes from, whereas one of the things that the district court did not do was in prohibited employment context, 42 U.S.C. Section 2008-2 also has A2 language that deals with limiting and segregating employees or otherwise affecting their status as an employee. That's specifically what I claim, and there is no need for me to specifically claim a specific theory of legal precedent, and the court didn't recognize that. That was clearly pled, and the district court failed to bring that up. Well, I'm looking at your complaint, and the – you know, you invoke 42 U.S.C. 1981, and that's discrimination with respect to contracts, and there's a lot of case law that says that if you're not a party to a contract, you can't bring such a claim. So I'm asking you again, you know, how do you square your complaint with the state of the law that is that you can only bring a 1981 case if you have a contract? And what the terms of the contract are. Sure. 1981 leads into 42 U.S.C. 2000 based on the language that says, and to the full and equal benefit of the law as we proceed. So that is the section that brings in 42 U.S.C. 2000, A2, that deals with terms and conditions. So that's how we get there. So it's not based on a strictly make-and-enforce contract language. 1981 is? Well, no. Actually, the specific language of 1981 includes to make-and-enforce contracts as soon as the parties give evidence and to the full and equal benefit of all laws as we proceed. For security. Ensured by white citizens. So the protection is that 42 U.S.C. 2000 A2 and case law shows that, you know, the benefits of working are equal to, should be equal to, of a white citizen. I'm a protected class of African-American male like myself. And that's why it goes into, you know, check the, you know, other protected categories, you know, of gender and things like that. If I can move on. Mr. Joyner, you're about four minutes over time and about six minutes over the time if we had stopped when you reserved two minutes for rebuttal. So I am going to stop you there. I appreciate the argument. And we will give you those two minutes on rebuttal.  The claim against Morrison. I'm sorry, Mr. Schenberg. Mr. Joyner, could you please mute while Mr. Schenberg is speaking? Thank you. Mr. Schenberg. Thank you, Your Honor. The claim against Morrison is that plaintiff wasn't assigned to a work stream from the very beginning of his employment, whereas others were. But the complaint provides no information about the relative qualifications and experience of those assigned to the various roles on the project, what those various roles on the project were, what a work stream is, or whether the assignments were made by the same decision maker or anything else that might justify an inference that the reason for the decision to assign him as he was is his race. In fact, plaintiff asserts in his brief that he had superior antitrust experience to the others. Maybe he did. Maybe he didn't. Maybe he was the only one with antitrust experience. Maybe the others had different antitrust experience. Certainly, the complaint doesn't provide us any of that information. But the admission does highlight that not everyone there was the same and that, therefore, no reasonable inference may be made from the fact that not everyone was treated the same. Counsel, are you familiar with our decision in Wright v. Eugene and Agnes? I believe- Morton Meier Foundation. It's a 2023 decision. It's the latest case from our court addressing a motion to dismiss under this statute. Yes, and as I recall, that Judge Walker joined Judge Wilkins' opinion that said that the pleading, what has to be pled, tracked the McDonnell-Douglas-Prometheus elements. You're close. Well, I believe Judge Walker – well, you can clear that up. But, well, let me just read something from that opinion to you. It says, I would just love to hear how you would have us distinguish this case because, in particular, you've drawn on cases like Butler, which is that summary judgment, and does say you need to do a lot to explain how others are similarly situated. And this decision draws on a prior one called Nanko Shipping that said allegations regarding comparators and so forth would strengthen the claim, but they're not required at the pleading stage. I think that's right. And what I would say is that, of course, what Iqbal says is you can't just assume racial decision-making. You can't just plead enough facts to make it a possibility that there was racial decision-making. You have to provide enough facts from which the Court can reasonably conclude that the defendant actually made the decision at issue because of race. You need not necessarily do that by pointing to a similarly situated comparator who was treated better. But that is the path that the complaint in this case tried to take. You do have to provide some factual information that establishes that they are, in fact, similarly situated. Otherwise, you just have a person saying, I'm black and they were white and we were treated differently. And that's not enough to draw the inference. I guess one specific sentence in the complaint is the sentence that says, essentially, everybody else hired through higher counsel. And I suppose, in theory, everyone else hired through higher counsel for this project was placed on a work stream. And he wants – he's asking us to infer, well, if you're hired for this project by higher counsel, there's at least some determination that you have similar qualifications for the project and that that's enough. What's your response to that? Well, we don't know enough about the project to know if everybody had similar qualifications or not. Presumably, there were at least two roles on the project because he was assigned to something else other than a work stream, whatever a work stream might be. And there's no reason to think that it was limited to just two roles. And the allegation of everyone who was hired by higher counsel was assigned to a work stream doesn't address at all the possibility that others were hired through other legal recruiting firms. So I think that what we don't have is enough to say that everyone was similarly situated and that race must therefore be the explanation or even that a reasonable inference may be drawn from that. The claim against higher counsel is that after Morrison approved his request to work remotely, that higher counsel denied the request for him to work remotely for three days, which he says he did so that he did not, quote, inadvertently violate a court order that coworker one had obtained against him. Now, ironically enough, he looks to coworker one here as his similarly situated comparator, but not only is the complaint silent about who granted coworker one's request to work remotely or even who coworker one worked for, which plaintiff admits he doesn't say, and he admits that in his opening brief. The complaint actually shows that plaintiff and coworker one were not similarly situated. First, the complaint includes an exhibit that shows that in the higher counsel's denial letter to him with regards to remote work, it also pointed out that his request violated a previous instruction to him that he should not have submitted that request directly to Morrison, but rather he should have submitted it to higher counsel. Then it goes on to say that if he does it again, he might lose his job. And there's nothing in the record to suggest that coworker one had violated a similar instruction from anybody. And second, the entire premise shows a material difference. Coworker one had not only accused plaintiff of sexual misconduct, but filed a lawsuit against him and obtained a court order telling him to stay away from her. And so it's just simply not reasonable to assume that race or to infer that race is the reason that plaintiff was treated differently. I want to briefly go back to Wright because at least on the face of the opinion, it was a plaintiff who said she was terminated from a position and then was defamed by her employer. And it looks like the key allegation that the court credited was that her predecessor, a white man who was also separated from the company, was not defamed. And so just if those are the facts. I don't know if those are all the facts in the case. It may be that the nature of the job was that they must have been similarly situated in ways that it's certainly not clear in this complaint, that they must have been. In fact, he establishes there are at least two different roles here. And he says he had superior qualifications. And maybe he did and maybe he didn't. Maybe that's why he was assigned the way he was. We just don't know. A final point about the similarly situated issue, simply that in his opening brief, he said he tried to make the similarly situated argument. When that's debunked in our brief, in his reply, he comes up with a new argument that he doesn't have to make the similarly situated showing, which is true, except that he doesn't point to any other facts from which discrimination might be reasonably inferred. And his cases for the belated argument are also inapposite, because they simply don't address similarly situated. Or if they do, they do it in the different context of Fair Labor Standards Act collective action certifications, or they rely on pre-ex vault decisions. Plaintiff? One last question.  Of course. Do you have a view on whether we actually have jurisdiction over the wrongful discharge claim? That's a claim under D.C. law. We only have supplemental jurisdiction over state law causes of action if they arise from a common nucleus of operative fact. And they really seem quite disconnected from the racial discrimination claims. I don't have an answer for you. I'm sorry. Okay. I appreciate that. I do know that the Court felt that because there was no pleading with regards to dissimilar treatment, it didn't need to address the adverse action issue. But I would like to do so briefly, in that plaintiff rightly cites that the Supreme Court's recent case in Muldrow provides the answer there. But that court says you have to show some kind of actual harm. And I don't think in either of these cases, situations, that he does that. With regards to the work stream assignment, the only thing he pleads is that theoretically he could have lost some pay. But, in fact, he pleads himself out of court because in a different paragraph he says he cut his own pay because he was unhappy with something an associate said to him. I want to ask you about the Wright case and the NANCO case. Wright says, quoting NANCO, the pleading standards under section 1981 track those in the familiar McDonnell-Douglas rubric for alleging a prima facie case of purposeful employment discrimination. And the same language, that's language that's quoted from the NANCO case. But later on, in a footnote, the court in Wright says something to the effect that in a nondisparagement or, I'm sorry, the we explicitly stated that a comparator is not needed at the pleading stage, citing NANCO. And then there's an opinion by Justice Thomas in a case that I can't pronounce the name of that says that the pleading standards for, not pleading standards, but the standards for summary judgment in McDonnell-Douglas don't apply at the pleading stage. Is it possible to square the statement in Wright and the statement in NANCO with the Supreme Court's decision in the Justice Thomas case? I'm not sure what Justice Thomas was talking about. Of course he was talking about McDonnell-Douglas. Well, of course, the difference, of course, is at the pleading stage you have to allege the facts, whereas at the summary judgment stage you have to provide some admissible evidence to support that those facts are true. As to the statement about you don't need a comparator, again, you don't need a comparator, but if that's the path you're going to go down, then you need some facts to show that it actually is a comparator. And plaintiff, that is the path that he chose. He didn't choose any other path to go down. The Supreme Court case is not cited in either NANCO or in Wright, but it is cited by the plaintiff here in his reply brief on page 13, I think it was. And I don't — you don't cite the case either. I don't recall it, no. You don't know it at all? I don't think I know what case you mean, Your Honor. I'm sorry. Let me see if I — I have a copy of it here. If you bear with me, maybe I can straighten this out. Yeah. Here's why I can't pronounce it. It's — the plaintiff or the Petitioner is S-W-I-E-R-K-I-E-W-I-C-Z. Oh, Swerkiewicz? I think that's the case. Yeah. I think it's an older case. I think it predates Iqbal. 2002. Yeah, it does. I think it predates Iqbal, and I don't think it, therefore, is the — provides the governing law with regards to what the plaintiff has to plead. Well, it says — the holding is that the McDonnell-Douglas framework does not — is not required at the — at the pleading stage. Well, certainly the entire framework is not, because the McDonnell-Douglas framework includes burden shifting, which we don't ever get to at the pleading stage. But what we do get to in the pleading stage, and what the case that Judge Garcia referred to earlier, that Judge Walker participated in, says, is that for a 12B — at the 12B-6 stage, what you do is you track the primate fascia elements of the McDonnell-Douglas test. I have to at least — your proposition is you — if you're going to make an argument on the basis of, you know, disparate treatment, right, you've got to at least allege that the people who were treated like you were similarly — or unlike you were similarly situated to you. You have to either do that or you do it a different way. You might do it through a pattern of decision-making, like a Teamsters case. You might do it through direct evidence of, you know, I am firing you because of this. Right. But you — if you're going to compare yourself, you have to — you have to buttress that with some facts to show you were, in fact, similarly situated to those — The rest of McDonnell-Douglas you don't have to show. That's correct. That's correct. The burden shifting you do not have to show. I have more, but my time is up, so I look to you, Dad. Your time is up. I thank you for your argument. Thank you, Your Honor. Mr. Joyner had reserved two minutes, but I will give him five minutes because we went three minutes over with Mr. Schenberg. Thank you, Your Honor. I'm actually familiar with Slykervich, and I believe it is directly relevant to this case here. The opinion that Justice Thomas talked — specifically talked about the incongruence between having a plaintiff have to plead a promissation case showing evidence of discrimination versus if direct evidence of discrimination was shown during discovery, he wouldn't have to meet that burden. And that's specifically what's going on here. And the facts of Slykervich are very relevant because the court goes on to say that the plaintiff did not plead every single detail, but he pled enough to put the defendant on notice of what the claim was. And to meet the fair notice burden, what he said was that, you know, it was broad-brush strokes. The events leading up to the termination, some of the relevant dates, the ages because it was an age discrimination case and also with a nationality, and some of the relevant people involved. The court said even conclusionary statements are allowed as long as you provide some type of detail. And the requirement — you know, if there's a problem, it needs to change based on the rule because the language of the rule is a short, plain statement. And the only way that a court may — Slykervich says the only way a court may dismiss this is if there's no clear reason to be granted based on the fact consistent with the complaint. I have met that burden.  Mr. Joyner, do you have thoughts on the question that Judge Garcia asked with regard to the wrongful termination claim and supplemental jurisdiction? Your Honor, unfortunately, it is nothing that I was prepared for. So I can't answer that at this time. Okay. Okay. Mr. Joyner, one of the things opposing counsel mentioned was that the complaint doesn't allege who made decisions about placing folks on work streams. Can you explain why that sort of basic allegation shouldn't be required? Well, I do say that I was assigned to — was assigned by a partner, Nolan, and Associate Harris. And the reason why it's not relevant to actually explain those details is because at the point in time when I was hired or anybody was hired, it specifically has to say that higher counsel — everyone that higher counsel assigned was put on an integration, on to a specific team. It didn't matter, you know, who actually did the administration of that. It would be similar to the lifeguard that was working for a county to go from pool to pool to pool if he's an African-American. And every other, you know, white employee, as soon as they were hired, they were assigned a team. How they got assigned a team is not relevant. It put — again, going back to the Clayton standard and going back to They're on notice for what that claim is. That's the whole purpose of discovery. That otherwise, like I also said in brief, otherwise everyone has to be an investigator. You know, I mean, it wouldn't be normal for any person to come into a place of business and get assigned or not get assigned to some particular task and then have to try to ask the question, hey, who made this decision? Who did this? And then something happens and you're forced to, you know, get information. There's no way that you would know. An employer looking at that, an employer looking at that situation is like, who is this guy? Why is he worried about that? That's not what I was hired for. I was hired to provide integration counsel for that merger. And the relevant factor is everybody on that team was an attorney. It wasn't this. There were, you know, people that were doing accounting or that were doing some kind of business analysis. All the attorneys that were put in that position were specifically there for the integration of these two companies. So at the point in time when I was hired, I should have been put on a team but for, you know, partner Nolan not, you know, not assigning me and she had to provide the authority. There are a lot of issues that I wasn't able to touch on involving computed liability and involving the hostile environment. And I believe there's also an issue that the court should consider based on the recent St. Louis decision where the court has, you know, changed the pleading standard or the requirement for these adverse events. I think that's a question to the whole IP. Thank you, Mr. Joyner. Case is submitted.
judges: Walker; Garcia; Randolph